STEWART *et al. v.* HOOK *et al.*

1. Independently of patent rights, the discoverer of a medical preparation has a property right in his discovery, in that he may keep it a secret, and those who, through confidential relations with him, gain possession of his secret, will be restrained by a court of equity from divulging it so as to make use of it to his detriment. This right may be sold as any other property.

2. One to whom the formula and right to manufacture an unpatented, though secret, medical preparation has been sold by the discoverer, can not maintain an action for damages against another to whom the discoverer has subsequently sold the same formula and right, without showing that the defendant, in the acquisition of the formula, has been guilty of a breach of confidence or of contract with the plaintiff, or has acted in fraud of the plaintiff's rights.

Argued June 30. — Decided August 12, 1903.

Action for damages.     Before Judge Reid.     City court of Atlanta.   December 6, 1902.

*C. L. Pettigrew,* for plaintiffs.

*Anderson, Anderson & Thomas,* for defendants.

CANDLER, J. The plaintiffs, James M. and P. A. Stewart, brought suit in the city court of Atlanta against A. C. Hook and Alfred L. Manson, the material portions of the petition being substantially as follows: Both the plaintiffs and the defendants are residents of Fulton county, Georgia. For several years prior to December 15, 1894, one L. F. Tilden manufactured and sold a certain cure for the opium and morphine habit, known as the Acme Opium Cure, of which cure Tilden was the discoverer and sole owner, and by means of which he had built up a large business. The cure consisted of secret formulas and receipts for the manufacture and compounding of medicines for the cure of the opium and morphine habit, alleged to be known only to Tilden. At different times during the month of December, 1894, Tilden sold to each of the plaintiffs a one-half interest in the Acme Opium Cure, including all the formulas, receipts, and the business, and the plaintiffs became the sole owners of and partners in the said cure and business; and Tilden covenanted with the plaintiffs " that he would never sell, manufacture, offer for sale, or advertise any medicine under the name of the said Acme Opium Cure, and that he would not reveal the secret of the manufacture of the same to any person whatever, nor would he at any time sell or deal in any-

thing with a name so similar as not to be distinguished from the cure sold to the said J. M. & P. A. Stewart." Immediately after their purchase of the business from Tilden, the plaintiffs began manufacturing, advertising, and selling the Acme Opium Cure, and soon built up a large business, from which they made a profit amounting, in round numbers, to $2,500 per year. About January 1, 1897, Tilden, in violation of the plaintiff's rights, sold the same formulas and receipts to the defendants, and the defendants began actively to manufacture and sell the said cure under the name of the Acme Opium Cure. This was not done by public advertising, but by secret correspondence all over the country under the name of L. F. Tilden, and the defendants used "the same formulas and receipts belonging to the plaintiffs, used the same literature and all the means known for building up the business in this line." This was unknown to the plaintiffs until July, 1902. From the time of the sale to the defendants and the manufacture and sale of the Acme Opium Cure by them, the business of the plaintiffs fell off greatly and has been almost taken away from them. The plaintiffs were the sole owners of the Acme Opium Cure and all its appurtenances, "including the trade name of the Acme Opium Cure, and the defendants have infringed upon their said trade name and damaged their business, and appropriated to themselves profits belonging to the plaintiffs and their property in said formulas and receipts." They prayed for damages in the sum of $1,000 per year from January 1, 1897, to July 1, 1902, amounting to $5,500. To this petition the defendants demurred generally and specially; the court sustained the demurrer and dismissed the suit, and the plaintiffs excepted.

While the petition alleges that the defendants have infringed the trade name which was the property of the plaintiffs, the action as a whole does not seem to be one for damages for the infringement of a trade mark or trade name, and any claim which may have been made on that ground was abandoned in the argument before this court. The sole contention made in the brief of counsel for the plaintiffs in error is that their petition set out a cause of action, in that it alleged a violation by the defendants of their property right in the secret preparation known as the Acme Opium Cure. It is well settled that the discoverer of a medical preparation or formula, even though such preparation be not patentable,

has, like an author or an inventor, a property right in the product of his mental labors.     This right was recognized at common law, independently of copyright or letters patent.     See Tabor v. Hoffman, 118 N. Y. 30, 16 Am. St. R. 740, and cases cited.   It seems equally clear that such property, like any other, may be transmitted by sale or otherwise by the discoverer to others.   The property right in an unpatented preparation, however, is not an unqualified one, and is only exclusive until, by publication, it becomes the property of the public.   Tabor v. Hoffman, supra.   In other words, the discoverer may keep his formula a secret, and no one may, by fraud or artifice, obtain his secret from him.     One who, by reason of confidential business relations with the discoverer, has gained possession of his trade secret, will be restrained by a court of equity from betraying the trust reposed in him by using the formula for his own gain.     Morrison v. Moat, 20 L. J. (N. S. ) 513; Peabody v. Norfolk, 98 Mass. 452, 96 Am. Dec. 664; Salomon v. Hertz, 40 N. J. Eq. 400; Tabor v. Hoffman, supra; Kerr, Inj. *440.     If, however, one honestly and fairly comes into possession of the formula of an unpatented preparation, he has the right to use it and to sell it, and equity will not restrain him from so doing.   See James v. James, L. R. 13 Eq. 421, where it was held: " Any person who has, without the use of unfair means, become acquainted with the mode of compounding a secret unpatented preparation may, after the death of the original discoverer, make and sell the compound, describing it by the name of the discoverer." The case of Chadwick v. Covell, 151 Mass. 190, 21 Am. St. Rep. 442, is, as to its facts, very similar to the case now under consideration.     There it appeared that the plaintiff had come into possession of certain secret formulas by gift from the administratrix of the discoverer, Dr. Spencer, and began to manufacture and sell the medicines.   Subsequently the administrator de bonis non conveyed by deed to the defendant, and the plaintiff brought suit to enjoin him from manufacturing or selling the medicines.     The court, Holmes, J., delivering the opinion, said:   " So far as the right to manufacture and sell the medicines goes, the plaintiff's case may be disposed of in a few words.   Dr. Spencer had no exclusive right to the use of his formulas.     His only right was to prevent any one from obtaining or using through a breach of trust or contract.     Any one who came honestly to the knowledge of

them could use them without Dr. Spencer's permission and against his will." To the same effect see Peabody *v.* Norfolk, supra, and note appearing in 96 Am. Dec. 669 ; Massam *v.* Thorley's Cattle Food Co., 6 Ch. D. 574 ; Kerr, Inj. *441.

Applying this rule to the present case, it becomes apparent that the court below did not err in sustaining the demurrer.   There is no allegation in the petition that the defendants came by their knowledge of the formula of the Acme Opium Cure in any unfair way, or that they have committed any fraud or breach of trust of which the plaintiffs can complain.   The nearest that the petition comes to making such a case is in the allegation that the business of the defendants was done " by secret correspondence all over the country under the name of L. F. Tilden ; " but while this is an intimation that the business methods of the defendants were clandestine and far from above-board, it is by no means sufficient to charge them with having obtained the formula by fraudulent means.   On the contrary, the petition affirmatively shows that the defendants procured that formula from its discoverer, Tilden, and from aught that appears their acquisition of it was as honest as that of the plaintiffs.   It does not even appear that they knew of any right in the plaintiffs to manufacture or sell this preparation.   It is quite evident that the plaintiffs have sued the wrong man.   According to their allegations, Tilden was bound to them by contract not to divulge the secret formula of the Acme Opium Cure, but (whether to relieve the sufferings of a drug-cursed world or to increase the dimensions of his bank-account does not appear) he has violated his agreement and in so doing has well-nigh compassed the ruin of the plaintiffs' business.   As has been seen, whatever Tilden's liability may. be — and this we are not called upon to decide,— the ones to whom he made the second sale of his discovery can not, in the absence of a showing that they obtained the formula through some fraud or unfairness practiced upon the plaintiffs, be held liable to them in any way whatever.

*Judgment affirmed.   By five Justices.*