26715. OUTSIDE CARPETS, INC. v. INDUSTRIAL RUG COMPANY, INC. et al.

SUBMITTED SEPTEMBER 14, 1971—
DECIDED OCTOBER 21, 1971—
REHEARING DENIED NOVEMBER 5, 1971.

*Clary & Kent, Horace T. Clary,* for appellant.
*William A. Ingram,* for appellees.

HAWES, Justice. Outside Carpets, Inc., filed suit in Bartow Superior Court against Industrial Rug Company, Inc., Forrest Holsomback, Charlie Goble, Vern Kuhlman and W. D. Reeves seeking damages for the prior use of, and a permanent injunction restraining the future use of an alleged trade secret. The defendants filed an answer in which they denied the material allegations of the complaint. Thereafter, the defendants took the depositions of James E. Jordan, president of the plaintiff corporation, and of another employee of the plaintiff, and subsequently filed a motion for a summary judgment based on "the pleadings, depositions, admissions on file and affidavits attached" to said motion. The plaintiff filed an affidavit of Jordan in opposition to the motion, and the defendants filed responsive affidavits of the defendant Holsomback. The trial court took the matter under advisement and granted the defendants' motion for a summary judgment, from which judgment the plaintiff appealed.

The alleged trade secret in this case is a so-called vinyl fusing oven used to laminate vinyl backing to carpets, rugs and mats, and the process utilized by the plaintiff in connection therewith. It appears that the plaintiff corporation was chartered in May of 1965. The defendant Holsomback worked for the plaintiff from March, 1966, to December 22, 1967. Jordan testified in his deposition that Holsomback was employed by the plaintiff because he (Jordan) considered him knowledgeable in the carpet business, because of his mechanical knowledge, but not because of

his knowledge of vinyl; that he was employed to help the plaintiff develop the oven and the processes that were later developed by the plaintiff with his help, and that he proved to be a very valuable employee, not only in developing the oven in question but in designing and developing a lot of the other equipment that was necessary to put the whole process together. Defendant Holsomback, upon leaving the employ of plaintiff, went to work for the defendant Industrial Rug Company, Inc., and, while there employed, supervised the construction and development of an oven which the plaintiff contends is substantially like its oven and utilizes the same secret process utilized by it.

Plaintiff contends that its oven is unique and distinguishable from all other ovens mainly in the design of air movement, controls of temperature, fusing characteristics, the amount and way of dispersing vinyl, the cooling of material as it comes out of the oven, and the speed with which the lamination process can be accomplished as compared with other ovens. Plaintiff's oven is generally described as being about 80 feet in length, 7 feet wide, having near its entrance end two sets of fans consisting of three fans per set with two additional three-fan sets near the rear end of the oven. Located about 10 feet from the front of the oven and in the lower part of the oven below a moving conveyor belt is a 4½-foot jet gas burner. The fans blow the heat from the burner lengthwise the oven and recirculate hot air, the flow of the air being controlled by metal baffles directed up and underneath the moving belt. Plaintiff contended that its oven is unique in that, as designed, it speeds up the process of casting and fusing vinyl; in the manner of distributing the vinyl; in the type of control; in the type of heat transfer; in the speeded up process of laminating vinyl sheet to carpet; in that the type fan systems utilized move the heated air through the oven in such a manner that the heat is transferred to the vinyl through a moving belt in an even manner so as to produce an even fusing job; and, in that "the air is distributed in such manner down a tunnel on the lower side of the oven

and the hottest air comes out underneath the belt near the exit of the oven." It differs from other ovens in that the hot air is moved lengthwise the oven rather than crosswise. It was further described as being unique "in that the air is distributed where the temperature range can build up gradually as the vinyl enters the oven from the front and reaches its highest point of fusion at the exit end." Supplemental heat above the moving belt is provided by a bank of approximately 150 infrared heat lamps. Plaintiff contended, and its president, Mr. Jordan, so testified, that there are only four ovens like its oven in existence, two at its plant in Rome, Georgia, one at the plant of the National Rubber Company, Toronto, Canada, which was built under license from the plaintiff, and the one built by the defendant Industrial Rug Company, Inc., at its plant at Adairsville, in Bartow County, Georgia. The defendant introduced evidence in the form of affidavits of the individual defendant Holsomback that in building the oven for the plaintiff he utilized skills which he had acquired in more than 20 years working at various manufacturing plants; that no new principle is involved in the plaintiff's oven; that it utilizes no principle or feature not generally known to the industry; that ovens similar to ovens of the plaintiff have been in use for a number of years at the Textile Rubber and Chemical Company at Dalton, Georgia, the International Rug Company, Cohutta, Georgia, and the Boyd Manufacturing Company at Chattanooga, Tennessee, and that the oldest oven of this type was designed by Crown Rubber Company, at Freemont, Ohio. He further testified that there is a very distinct difference in the oven built for defendant, Industrial Rug Company, Inc., and the oven built for the plaintiff. In his affidavit he stated in some detail the differences in construction and arrangement of component parts of the plaintiff's oven and that of Industrial Rug Company, Inc., but this evidence clearly shows that defendant's oven utilizes many of the features utilized by the plaintiff's oven and claimed by the plaintiff to be unique. There are some differences, and Holsomback sought to outline them in his

affidavit. The Industrial Rug Company oven can run 13 feet per minute and the plaintiff's oven runs only 8 to 9 feet per minute. Plaintiff's oven runs at 380 degrees and defendant's at 450 degrees. Different resins are used in the plaintiff's oven. He explained that chemists determine resins because resins vary, and the difference in the output of the ovens is determined by the size of the burner—the amount of heat, and the fusing temperature of the vinyl as prepared, supervised and manufactured by the chemical company. Holsomback stated, in his affidavit, that he made several trips to the plant of the Boyd Manufacturing Company at Chattanooga, Tennessee, during the time the plaintiff's oven was being built, to examine the oven at that location, presumably for the purpose of copying or duplicating certain features thereof. Such evidence would authorize a jury to find that there was nothing original or unique about plaintiff's oven, but it would not require such a finding. It further appears that the various components of ovens of the types involved, to wit, the fans, burners, conveyor belts, rollers, etc., are to some extent available as standard items on the market from various manufacturers, though some of these items, like the rollers, may have to be manufactured especially for the particular oven being built.

Under this evidence, we think at least two distinct issues of fact are presented. The evidence presents a dispute, first of all, as to whether or not the plaintiff, in fact, has a trade secret, and, if so, whether the oven built by the defendant is like it and utilizes the same principles as the plaintiff's oven.

"In 43 CJS 750, [Injunctions], § 148, it is stated: 'A trade secret, within the rules pertaining to the rights which can be protected by injunction, is a plan, process, tool, mechanism, or compound, known only to its owner and those of his employees to whom it must be confided in order to apply it to the uses intended.'" *Vendo Co. v. Long,* 213 Ga. 774, 776 (102 SE2d 173); *Taylor Freezer Sales Co. v. Sweden Freezer Eastern Corp.,* 224 Ga. 160, 164 (160 SE2d 356). A trade secret is a property right which the courts

will protect by restraining its divulgence by one who has acquired it through confidential relations with the discoverer thereof. Such right exists irrespective of any copyright or letters patent. It does not exist, however, with respect to matters which are generally known in the trade, and, thus, an unpatented machine or process the knowledge of which has honestly and fairly come into the possession of others is not a trade secret. Nevertheless, "one who, by reason of confidential business relations with the discoverer, has gained possession of his trade secret, will be restrained by a court of equity from betraying the trust reposed in him by using the [knowledge thus acquired] for his own gain." *Stewart v. Hook,* 118 Ga. 445, 447 (45 SE 369, 63 LRA 255); *Walker v. Berger,* 148 Ga. 326, 331 (96 SE 627); *Alexis, Inc. v. Werbell,* 209 Ga. 665, 668 (75 SE2d 168). But, "a man's apitude, his skill, his dexterity, his manual and mental ability, and such other subjective knowledge as he obtains while in the course of his employment, are not the property of his employer, and the right to use and expand these powers remains his property unless curtailed through some restrictive covenant entered into with the employer. Williston on Contracts, § 1646, p. 4627." Pittsburgh Cut Wire Co. v. Sufrin, 350 Pa. 31, 35 (38 A2d 33); 56 CJS 484, Master and Servant, § 72a, n. 79.

Under the foregoing rules, the evidence adduced before the court on the motion for a summary judgment presented a clearcut issue as to whether the plaintiff, in fact, possessed a trade secret or whether the machine and the process upon which the plaintiff bases its claim is nothing more than a process and device generally in use in the carpet and mat producing industry, and whether, if it is in fact a trade secret, the defendants have in fact infringed on such secret or merely used the mental ability and subjective knowledge obtained by Holsomback in his employment with the plaintiff and his former employers through the years. It is not relevant to the issue that no express written contract or restrictive covenant was entered into by the plaintiff and the defendant Holsomback preventing disclo-

sure here sought to be enjoined.

Finally, it must be said that the liability of Industrial Rug Company, Inc., to the plaintiff must depend on proof of a conspiracy between it and the defendant Holsomback. The law recognizes the intrinsic difficulty of proving a conspiracy. Conspiracy may sometimes be inferred from the acts done, the relation of the parties, the interest of the alleged conspirators and from other circumstances. It is not necessary to prove an express agreement among the conspirators, but such agreement may be inferred from proof of the circumstances alone. The essential element of conspiracy is a common design, but it is unnecessary to prove that the parties met together either formally or informally or that they entered into any explicit or formal agreement. It is sufficient if it be shown that two or more persons, either positively or tacitly, came to a mutual understanding that they would accomplish the unlawful design. *Cook v. Robinson,* 216 Ga. 328 (5) (116 SE2d 742); *Nottingham v. Wrigley,* 221 Ga. 386, 388 (144 SE2d 749). It is within the exclusive province of the jury to draw inferences from the evidence. Under the facts adduced to the court by the parties here, upon proof of the other elements of the plaintiff's claim, a jury would have been authorized to infer a conspiracy between Holsomback and Industrial Rug Company, Inc., for the latter to utilize the plaintiff's trade secret.

The solution of these questions, depending as it does upon inferences to be drawn from the evidence and the weight and credit to be given to the conflicting testimony of witnesses, is for decision by a jury and should not have been resolved by the court on motion for a summary judgment.

It follows that the trial court erred in granting the defendant's motion for a summary judgment.

*Judgment reversed. All the Justices concur.*