34601, 34602. TEXTILE RUBBER & CHEMICAL COMPANY v. SHOOK et al.; and vice versa.

HILL, Justice.

Textile Rubber & Chemical Company appeals the order of the trial court denying its petition for an interlocutory injunction to protect its alleged trade secrets and to prevent the appellees from hiring its employees. The appellees are James P. Shook and J. G. Arnold, former managing employees of Textile Rubber, along with Kassel Foam Products, Inc., and Foam Products Company, a new corporation formed by Shook,

Arnold, and Jerry Kassel. Textile Rubber does not appeal the trial court's ruling that the employee covenants against competition and disclosure signed by Shook and Arnold are unenforceable. By cross appeal, the appellees appeal the trial judge's subsequent order, entered pending appeal, prohibiting them from doing business with any of Textile Rubber's customers other than Kassel Foam Products, Inc.

Shook and Arnold were the general manager and sales manager, respectively, of Textile Rubber's coated fabrics division. That division produces goods for customers in the shoe, garment, and home furnishings industries by applying latex foam to fabric according to the particular customer's specifications. At the time the complaint was filed, Textile Rubber had approximately 20 customers. Kassel Foam Products, Inc., a purchasing agent for Dr. Scholl's foot products, was the division's largest customer, buying approximately 40% of its total production.

Kassel Foam Products attempted to purchase the coated fabrics division. The attempted purchase was rejected. At this point Shook and Arnold became concerned about the security of their jobs at Textile Rubber because of the possible loss of the principal customer. They offered to sell Jerry Kassel a large oven used in curing foam which they had recently purchased. He decided to purchase the oven and produce coated fabrics himself, provided Shook and Arnold would leave Textile Rubber and go into business with him. They agreed, and Foam Products Company was formed for the sole purpose of coating fabrics for Kassel Foam Products, Inc., to sell to Dr. Scholl. Subsequently four other persons who had worked for Textile Rubber came to work for Foam Products, and Textile Rubber then filed its petition for injunctive relief.

1. (a) Textile Rubber contends that it has refined a production process which refinements are protectible as trade secrets, but the trial court refused to enter an interlocutory injunction against the appellees. Textile Rubber enumerates that ruling as error.

This court has had occasion to consider the protection of trade secrets in at least ten cases. A majority of those

cases involved written covenants against disclosure of trade secrets, confidential information, customer lists, etc.[1] There was no valid covenant against disclosure here and thus the covenant cases are not directly applicable. The court has considered the protection of trade secrets without reliance on any written agreement in *Stein v. National Life Assn.,* 105 Ga. 821, 826 (32 SE 615) (1899); *Taylor Freezer Sales Co., Inc. v. Sweden Freezer Eastern Corp.,* 224 Ga. 160 (2) (160 SE2d 356) (1968); *Outside Carpets, Inc. v. Industrial Rug Co.,* 228 Ga. 263 (185 SE2d 65) (1971); and *Thomas v. Best Mfg. Corp.,* supra, 234 Ga. at 789-790. A trade secret can be protected even without a written agreement. *Thomas v. Best Manufacturing Corp.,* supra, 234 Ga. at 789; *Outside Carpets, Inc. v. Industrial Rug Co., Inc.,* supra, 228 Ga. at 268, 269.

Georgia has adopted the definition that "[a] trade secret, within the rules pertaining to the rights which can be protected by injunction, is a plan, process, tool, mechanism, or compound, known only to its owner and those of his employees to whom it must be confided in order to apply it to the uses intended." *Thomas v. Best Mfg. Corp.,* supra, 234 Ga. at 789; *Outside Carpets, Inc. v. Industrial Rug Co.,* supra, 228 Ga. at 267; *Taylor Freezer Sales Co. v. Sweden Freezer Eastern Corp.,* supra, 224 Ga. at 164.

The crux of Textile Rubber's argument is that while the technology for applying foam to fabric is well known in the industry, it has protectible trade secrets in the

---

[1] *Stewart v. Hook,* 118 Ga. 445 (1) (45 SE 369) (1903); *Vendo Co. v. Long,* 213 Ga. 774 (2) (102 SE2d 173) (1958); *Harrison v. Sarah Coventry, Inc.,* 228 Ga. 169 (1) (184 SE2d 448) (1971); *Durham v. Stand-By Labor of Ga.,* 230 Ga. 558 (2b) (198 SE2d 145) (1973); *Thomas v. Best Mfg. Corp.,* 234 Ga. 787 (1) (218 SE2d 68) (1975); *Howard Schultz & Assoc. v. Broniec,* 239 Ga. 181 (4) (236 SE2d 265) (1977); *Nasco, Inc. v. Gimbert,* 239 Ga. 675 (3) (238 SE2d 368) (1977). The case of *Thomas v. Best Mfg. Corp.,* supra, involved a covenant which was void; the case was decided as a trade secret case without reliance on the void covenant. See also *Vendo Co. v. Long,* supra.

efficient, low cost production processes it has developed for its customers' products. It further contends that when Shook, Arnold and others left Textile Rubber, its production was disrupted while its unwritten processes were being relearned through reverse engineering.[2] In addition, it contends it has lost its competitive advantage since Shook and Arnold, having appropriated its trade secrets, are able to produce the same products without incurring developmental expenses. Textile Rubber relies on Water Services, Inc. v. Tesco Chemicals, Inc., 410 F2d 163 (5th Cir. 1969), as authority for its position. We disagree because Water Services, Inc. v. Tesco Chemicals, Inc., 410 F2d at 171, utilized a broader definition of trade secret than has been adopted in Georgia (above) and Textile Rubber has failed to prove trade secret status under the decisions of this court.

Shook and Arnold's involvement in the production process began when batches of the designated compound, together with the customer's specifications as to thickness, Pan-Dex (firmness) and fabric, arrived for injection into a frothing machine. The frothing machine, through aeration and flagellation of the latex, makes it possible to achieve additional stiffness without increasing the amount of latex used. In addition, chemicals could be added to the frothing machine to either quicken or retard the curing time of the foam. Curing time is an important factor in the cost of the finished product since it affects the required drying time and corresponding energy costs. After frothing, the foam is applied to a previously selected fabric and dried in large industrial ovens. In its brief, appellant acknowledges that coated fabric samples can be reproduced through "reverse engineering" and says ". . . the secret is producing the product at the lowest possible cost."

Mr. Shook refuted the "trade secret" nature of this

---

[2]Textile Rubber does not contend that Shook and Arnold actually took any records with them. Rather, it is surprised by the absence of such records and dubious that they could have memorized all the various procedures which had been developed by trial and error.

process. He testified that frothing and aeration were not constants in the production of a particular product but rather these adjustments differed with each batch of the same compound. He also stated that there were not any written production orders as to oven temperatures and speeds, but that these were simply things "that you learn over the years."

Two expert witnesses testified that they knew of no secret mechanical application involved in coating fabrics with latex. They stated that there were other people in the industry who had similar or identical knowledge about the process involved and that three corporations were presently producing a product indentical to Textile Rubber's Dr. Scholl product. This testimony was confirmed by Kassel's testimony that Dr. Scholl required him to maintain two suppliers of their product at all times and that Textile Rubber was simply one of his current suppliers.

Textile Rubber concedes that it has no trade secret in the products themselves ·nor in the generic means of production but it claims a trade secret in the production details (the refinements in the production process).

We find that Textile Rubber has failed to establish the existence of a "trade secret" but is complaining of the loss of the expertise of its employees and the resulting disruption their departures had on its production process. An employee's experience in assembling a number of steps to produce a desired end is not a trade secret. *Cudahy Co. v. American Laboratories, Inc.*, 313 FSupp. 1339, 1344 (D. Neb. 1970). "A person who leaves the employment of another has a right to take with him all the skill he has acquired, all the knowledge he has obtained, and all the information that he has received, so long as nothing is taken that is the property of the employer." *Vendo Co. v. Long*, 213 Ga. 774, 778 (102 SE2d 173) (1958). See also *Outside Carpets, Inc. v. Industrial Rug Co.*, supra, at p. 268.

Textile Rubber could have protected itself from the potential threat of the loss of a valued employee to a competitor through enforceable covenants against competition and disclosure. See *Durham v. Stand-By Labor of Ga., Inc.*, supra, and *Howard Schultz & Assoc. v.*

*Broniec,* supra. However, as has already been mentioned, the non-competition and non-disclosure covenants here were unenforceable, and Textile Rubber cannot now achieve the same result by claiming "trade secret" status. See Cudahy Co. v. American Laboratories, Inc., supra, 313 FSupp. at 1343.

Inasmuch as Textile Rubber failed to establish Shook and Arnold's access to any secret process known only to the employer (see *Vendo Co. v. Long,* supra, pp. 777-778), the trial judge did not err in refusing to issue an interlocutory injunction against disclosure of the production process.

(b) Textile Rubber also complains that the trial court made no ruling as to the trade secret status of its customer lists or as to certain financial data. There is no evidence that Shook and Arnold took any papers from Textile Rubber upon their resignation. Furthermore, " '. . . customers are not trade secrets. Knowledge on the part of the employee concerning the names and addresses of customers is not the property of the employer.' 28 Am' Jur 306, § 113; 43 CJS 755, § 148(b)." *Vendo Co. v. Long,* supra, at p. 778.[3] Similarly, a manufacturer's knowledge of the financial status of its customers is not a trade secret of the manufacturer, *Vendo Co. v. Long,* supra; *Taylor Freezer Sales Co. v. Sweden Freezer Eastern Corp.,* supra, 224 Ga. at 164-165. Nor has Textile Rubber presented any evidence regarding its own internal financial data which would justify a "trade secret" classification. See *Howard Schultz & Associates of the Southeast, Inc. v. Broniec,* supra, Division 4. The trial court did not err in denying injunctive relief as to the trade secret claims.

2. Textile Rubber also sought to enjoin further solicitation and hiring of its employees by Foam Products Company. The evidence shows that four Textile Rubber employees, in addition to Shook and Arnold, went to work

---

[3]As noted in Cudahy Co. v. American Laboratories Inc., supra, 313 FSupp. at 1344, an injunction preventing solicitation of customers is virtually equivalent to a covenant against competition. See *Stein v. National Life Assn.,* supra.

for Foam Products. The trial judge found that Shook and Arnold ". . . were not responsible and did not induce these departures." Textile Rubber contends that even though the trial judge's finding was correct as to Shook and Arnold in their individual capacities, it was erroneous as to Foam Products Company.

Kay Alfrey testified that she left Textile Rubber because she could not get along with her boss, that she left before Shook and Arnold did, and that she worked for another corporation before joining Foam Products. James Smith, formerly first shift supervisor at Textile Rubber, testified that he submitted his notice of resignation prior to and independent of Shook and Arnold's departures and had intended to go to work for Dow Chemical but changed his mind after the new corporation was formed. Smith personally hired the remaining two employees (one was his brother) after he became foreman at Foam Products, and neither Shook nor Arnold knew anything about it. No evidence was introduced as to whether Smith recruited these two employees or whether they approached him about the availability of employment. No evidence was introduced showing that Textile Rubber's remaining employees were irreplaceable. The trial court did not err in denying injunctive relief. *Orkin Exterminating Co. v. Martin Co.,* 240 Ga. 662 (242 SE2d 135) (1978); *Purcell v. Joyner,* 231 Ga. 85 (3) (200 SE2d 363) (1973).

3. Because of our rulings in Divisions 1 and 2, supra, the appellees' cross appeal of the trial judge's supersedeas is moot. Accordingly, the cross appeal is dismissed.

*Judgment affirmed. All the Justices concur, except Jordan, J., who concurs in the judgment only.*

ARGUED MARCH 12, 1979 — DECIDED MAY 2, 1979.

*Rogers, McGruder & Hoyt, Edward Hine, Jr.,* for appellant.

*Cook & Palmour, Bobby Lee Cook, A. Cecil Palmour, Kinney, Kemp, Pickell, Avrett & Sponcler, L. Hugh Kemp, McCamy, Minor, Phillips & Tuggle, James H. Phillips,* for appellees.